IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PHILMAR DAIRY, LLC; ARCH DIAMOND, LLC;
MOONSTONE DAIRY, LLC; and HENDRIKA
DAIRY, LLC,

      Plaintiffs/Counter-Defendants,

v.                                                               2:18-CV-00530-SMV-KRS

ARMSTRONG FARMS, and RANDY
ARMSTRONG,

      Defendants/Counterclaimants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO DISCLOSE ADDITIONAL EXPERT WITNESS

**THIS MATTER** comes before the Court on Plaintiffs' March 26, 2019 motion to compel discovery (Doc. 90) and Plaintiffs' motion for leave to disclose an additional expert witness. (Doc. 94). As for the former, Plaintiffs sought, but were refused, Defendants' tax returns and yearend income statements and balance sheets. In the latter, Plaintiffs ask to add Jan Hendrickx, Ph.D. as an expert to opine based on satellite imagery that, contrary to Defendants' claims, no fire occurred at Armstrong Farms in August 2017. In response, Defendants contend Plaintiffs have failed to establish a *prima-facie* case for punitive damages entitling them to sensitive financial records, the discovery is premature even if Plaintiffs satisfy their burden, and the requests are insufficiently tailored to protect Defendants' privacy interests. Defendants also maintain Plaintiffs cannot justify adding Dr. Hendrickx past the expert-disclosure deadline. Having reviewed the parties' submissions as well as the record, the Court exercises its discretion to order production of the financial records but to preclude Dr. Hendrickx's late disclosure.

## BACKGROUND

At this point in the litigation, the facts are well known. The parties' briefing on both motions highlights their respective positions. The Court does not repeat the facts here except as are necessary to the analysis below.

## DISCUSSION

### Discovery of Financial Records

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "The scope of discovery under the federal rules is broad." *Gomez v. Martin Marrietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995). Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad.,* Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007) (internal quotations marks omitted). The Court is given "wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

Generally, "normal civil procedure discovery regarding a defendant's financial condition is not permitted before entry of judgment." *Griego v. Douglas*, 2018 U.S. Dist. LEXIS 88562, at *10 (D.N.M. May 24, 2018) (citation omitted). Discovery related to punitive damages is an exception to this rule. *See id.* Under what circumstances that exception applies is disputed here. Defendants maintain Plaintiff's must make a *prima-facie* showing of entitlement to punitive damages before Plaintiffs may obtain financial records. Defendants also insist that even if a *prima-facie* case exists, discovery should not be allowed until a jury determines liability.

Finally, Defendants say Plaintiffs are, at most, entitled to a statement of net worth, not the tax returns and balance sheets Plaintiffs seek.

The Court acknowledges the varied practice federal courts follow in addressing discovery where punitive damages are at issue. *Compare Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, 2017 U.S. Dist. LEXIS 119532, at * 6,16 (D. Kan. July 31, 2017) (observing that "a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case" but staying production "until the District Judge determines whether Plaintiffs' claim for punitive damages survive any dispositive motion") *with Pedroza v. Lomas Auto Mall, Inc.*, 2008 U.S. Dist. LEXIS 117200, at *5-6 (D.N.M. July 10, 2008) (joining "the majority of state and federal courts [that] . . . permit discovery of a defendant's net worth without requiring the plaintiff to establish a prima-facie case for punitive damages" and explaining the "opposing party's interest in nondisclosure and confidentiality can usually be adequately protected by a protective order restricting dissemination of the documents and the information within").

The differences in approach are best explained by the broad discretion federal courts enjoy to balance competing interests. In this case, the Court strikes that balance in favor of immediate disclosure. First, Plaintiffs have plausibly alleged an entitlement to punitive damages. "New Mexico recognizes that, although punitive damages are not normally available for a breach of contract, a plaintiff may recover punitive damages when a defendant's breach was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights." *Anderson Living Tr. v. ConocoPhillips Co.*, 952 F. Supp. 2d 979, 1046 (D.N.M. 2013) (citing *Romero v. Mervyn's*, 784 P.2d 992, 998 (N.M. 1989)).

Plaintiffs allege numerous facts and circumstances in support of their claim of punitive damages.  Central to this case is whether Plaintiffs agreed to bear the risk of loss of hay stored at Armstrong Farms but already paid for by Plaintiffs.  Defendants insist the parties agreed at their initial meeting to shift the risk of loss from Defendants to Plaintiffs for hay stored at Armstrong Farms.  (Doc. 55-2).  Plaintiffs dispute the existence of such an agreement.  Plaintiffs point out the parties' original arrangement did not include storage; it called for hay Defendants produced to be weighed, tested, immediately delivered to Plaintiffs' dairies, and be paid for by Plaintiffs.  (Doc. 60-3).  Plaintiffs explain there was no reason for Plaintiffs and Defendants to have discussed or agreed to shift the risk of loss—no storage was necessary because Plaintiffs were to pay as Defendants delivered it to the dairies.  Later delays in the delivery of hay, Plaintiffs maintain, occurred because Defendants could not secure a means of timely transporting the hay, not because Plaintiffs requested for storage.  (*Id*.).  According to Plaintiffs, Defendants fabricated a convenient story about a hay fire—and a shift in the risk of loss—that allegedly occurred in August 2017 destroying 2,647 tons of hay Plaintiffs had paid for, but Defendants had not delivered.  (*Id*.).  Plaintiffs contend that they were not informed of the alleged fire until February 2018.  (*Id*.).

Plaintiffs also allege that Defendants falsified the results of hay quality tests that were actually undertaken by Defendants by increasing the relative feed value ("RFV") for the hay as shown on Defendants' invoices above the actual RFV test result, and by including RFV test results on invoices where, in fact, the hay's RFV had not been tested as required by the parties' agreement.  (Doc. 90).  Finally, Plaintiffs claim that Defendants invoiced Plaintiffs for hay *after* the date of the alleged fire and undertook to sell off assets and go out of business at the end of the 2017 farming season, knowing all the while that they would not be able to deliver the

quantity of hay that had been invoiced to and paid for by Plaintiffs. (Docs. 60-3; 90). Defendants dispute Plaintiffs' contentions. However, if Plaintiffs' case pans out, a jury could well award punitive damages.

Contrary to Defendants' argument, Plaintiffs need not make a *prima-facie* showing. While some state courts and federal courts outside the Tenth Circuit may favor such an approach, the Tenth Circuit has not imposed such a requirement. It appears almost universal among federal courts in this Circuit that a *prima-facie* case is *not* a prerequisite to obtaining discovery as to a defendant's financial condition. Defendants have not moved for summary judgment, and the Court remains unpersuaded that any type of heightened proof is required at this stage of the litigation. To the extent Defendants desire an evidentiary basis for the claim of punitive damages, Plaintiffs cite to record evidence in their brief. (Doc. 90). Defendants believe Plaintiffs overstate the significance of this evidence, but Defendants will be free to vigorously cross examine witnesses and present contrary evidence at trial. It is for the factfinder—not the Court—to weigh any competing inferences.

Second, while the Court could wait until the jury determines liability to allow discovery on punitive damages, the better exercise of discretion is to compel production now. Defendants did not move to bifurcate this case into liability and damages phases. As a practical matter, a separate round of discovery after liability is decided would delay the case unnecessarily and would not be an effective use of judicial resources. Defendants could have moved for summary judgment to test Plaintiffs' entitlement to punitive damages; they chose not to. Those courts that favor delaying discovery on punitive damages do so typically because there are pending dispositive motions on the topic or the deadline for filing such motions has not elapsed. *See,*

*e.g.*, *Accountable Health Sols*, 2017 U.S. Dist. LEXIS 119532, at *16.  Neither condition is the case here, and the Court sees no reason to delay discovery.

Finally, Plaintiffs seek Defendants' tax returns and yearend income statements and balance sheets.  Two concerns are present here: whether such documents show Defendants' financial condition germane to the punitive damages' inquiry; and whether the period sought is too broad.  The Court concludes these concerns do not foreclose Plaintiffs' document requests.  Typically, net worth, wealth, or financial health is at issue in a punitive-damages claim.  Tax returns and income statements, while they may not tell the complete story, do speak directly to these matters.  Discovery in the federal courts is not so limited as to preclude obtaining information that may have a bearing or lead to discoverable information on an issue. *See Anaya*, 251 F.R.D. at 649-50 (explaining the rules "contemplate[] discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case").  True, producing tax returns is invasive, but a confidentiality order exists to prevent further disclosure and assuage any concerns.  And while most probative for punitive damages discovery is the current year's financial condition, there are allegations that Defendants have decided to go out of business and retire, selling off assets to do so.  Thus, the three years of information requested by Plaintiffs is not an unreasonable time frame to give an accurate picture of Defendants' wealth.

### **Late Disclosure of Dr. Hendrickx**

Rule 26 requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence" as an expert.  Fed. R. Civ. P. 26(a)(2)(A).  If the witness "is . . .. retained or specifically employed to provide expert testimony" then "this disclosure must be accompanied by a written report —prepared and signed by the witness [.]" Fed. R. Civ. P.

26(a)(2)(B).  In any event, expert disclosures, including reports, must be provided within by the date the Court sets for doing so, here January 21, 2019.  Rule 37 affords a remedy where a party fails to meet the deadline: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  In the Tenth Circuit, four factors guide the Court's discretion in conducting the substantial justification/harmlessness analysis:  "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

At this stage in the litigation, the Court concludes that the late addition of Dr. Hendrickx will result in prejudice to Defendants that cannot be sufficiently cured.  Whether a fire occurred, and if so, what caused the fire, have been central issues of this lawsuit, known to Plaintiffs since the inception of the lawsuit.  Plaintiffs' decision to wait until after key depositions to ferret out details of Defendants' investigation (or lack thereof) into the fire strikes the Court as somewhat disingenuous.  The assistance of expert testimony to cast doubt on the existence of the fire was apparent well in advance of the expert-disclosure deadline.  At the very least, the need to *extend* that deadline should have been clear.  In fact, Plaintiffs timely disclosed experts that concluded "[t]here were no cloud-to-ground lightning strokes directly overhead the hey field on August 23, 2017 or during the overnight and morning hours of August 24, 2017" or "within 5 miles of the hay field" and "based on information gathered regarding other large hay fires, . . . this amount of hay would have taken several days to completely bur itself out, rather than the 8-10 hours suggested by Mr. Vest[.]" (Docs. 104-2;  104-3).

While Defendants would not necessarily be surprised by another expert on the general topic, the prejudice to Defendants is still manifest. Discovery closed on May 1, 2019 and Defendants are not permitted to depose Dr. Hendrickx under the Court's scheduling order. Further, Defendants have likely made strategic decisions on what type of experts it hired based on Plaintiffs' designations. If properly disclosed, Defendants may have decided to hire an expert to rebut Dr. Hendrickx's opinions, which are based on examination of satellite imagery that may fall outside the ken of Defendants' present experts. But the time to designate experts has long past, and Defendants would be at a disadvantage if the Court allows the tardy addition of Dr. Hendricks not to mention the costs associated with preparing a defense of this expert.

The Court has considered extending pretrial deadlines as a measure to cure prejudice to Defendants. To do so, however, will require opening discovery to allow Defendants to depose Dr. Hendrickx, affording Defendants a chance to find another expert to challenge Dr. Hendrickx, setting a deadline to disclose this new expert, allowing for the deposition of that expert, and fixing a time to file *Daubert* motions related to the new experts. The Court permitting the late disclosures, depositions, motion practice, and allowing enough time for the Court to decide any related motions will disrupt the August trial. As Defendants point out, Plaintiffs have other experts that may testify to the absence of any fire. On balance, the factors weigh in favor of denying Plaintiffs' motion to add Dr. Hendrickx.

**CONCLUSION**

For the reasons stated above, Plaintiffs are entitled to Defendants' tax returns and yearend income statements and balance sheets as requested subject to the confidentiality order in place. At this stage in the litigation, however, Plaintiffs cannot overcome the prejudice to Defendants that will occur if the Court permits the late addition of Dr. Hendrickx as an expert.

**IT IS, THEREFORE, ORDERED** that Plaintiffs' motion to compel (Doc. 90) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendants shall produce the challenged financial records on or before May 13, 2019 subject to the confidentiality order in place between the parties.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for leave to disclose an additional expert (Doc. 94) is **DENIED**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

.