IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILMAR DAIRY, LLC; ARCH
DIAMOND, LLC; MOONSTONE DAIRY, LLC;
and HENDRIKA DAIRY, LLC;

    Plaintiffs,

v.                                                                             No. 18-cv-0530 SMV/KRS

ARMSTRONG FARMS and
RANDY ARMSTRONG,

    Defendants,

and

RANDY ARMSTRONG,

    Counterclaimant,

v.

PHILMAR DAIRY, LLC; ARCH
DIAMOND, LLC; MOONSTONE DAIRY, LLC;
and HENDRIKA DAIRY, LLC;

    Counter-defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND EXCLUDING CERTAIN EVIDENCE AT TRIAL UNDER FEDERAL RULE OF EVIDENCE 403

THIS MATTER is before the Court on Plaintiffs' Motion for Sanctions for Spoliation of Evidence [Doc. 103], filed on April 17, 2019. Defendants responded on May 1, 2019. [Doc. 111]. Plaintiffs replied on May 15, 2019. [Doc. 117]. The Court has considered the briefing, the relevant

portions of the record, the relevant law, and the oral argument. Because Plaintiffs fail to establish the elements of a successful spoliation claim, the Court will **DENY** Plaintiffs' Motion. Nevertheless, the Court finds that exclusion of testimony or argument concerning the disputed evidence is warranted under Federal Rule of Evidence 403.

## BACKGROUND

Plaintiffs are dairies located in Portales, New Mexico. [Doc. 1-1] at 13. Defendant Armstrong Farms, owned by Defendant Randy Armstrong, is a farm near Dell City, Texas. [Doc. 1-1] at 3 (Complaint); [Doc. 55] at 4 (Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment). It agreed to sell Plaintiffs approximately 9,232 tons of hay for the 2017 growing season. [Doc. 43] at 4 (Plaintiffs' Motion for Partial Summary Judgment); [Doc. 43-1] at 1–2. After the hay was harvested, Defendants stored it on open-air stack lots on their farm until it was needed by Plaintiffs. [Doc. 55] at 4. From May 2017 through February 2018, Defendants delivered approximately 6,585 tons of hay to Plaintiffs. [Doc. 1-1] at 15.

Defendants claim that on August 23 or 24, 2017, a lightning-caused fire destroyed some of the stored hay. [Doc. 43-1] at 7–8. Defendants claim that, some time after the fire occurred, Alfred Vest, Armstrong Farms' former farm manager, discovered "smoldering, smoking embers"—and no remaining hay—where Defendants had stored 2,647 tons of hay intended for delivery to Plaintiffs. [Doc. 103-1] at 2–3; *see* [Doc. 55] at 3. He did not witness the fire. [Doc. 103] at 1. Vest testified that he took photos of the smoldering embers on his cell phone, but he no longer possesses the photos because "[they were] about five cell phones ago." [Doc. 55-1] at 4. Vest

testified that he does not recall sending these photos to Armstrong.[1] *Id.* According to Defendants, Vest "informed Plaintiffs within one week of the fire" of the hay's destruction.[2] [Doc. 43-1] at 7. Defendants neither delivered the 2,647 tons of missing hay nor refunded Plaintiffs' payment for it. [Doc. 1-1] at 16; [Doc. 55] at 4. Plaintiffs dispute that the fire occurred. [Doc. 1-1] at 16.

## PROCEDURAL HISTORY

Plaintiffs sued Defendants in New Mexico state court on April 26, 2018. [Doc. 1-1] at 1. The Complaint contains claims for unjust enrichment, breach of contract, fraud, and violations of the New Mexico Unfair Practices Act. *Id.* at 17–18. Defendants removed the action to this Court on June 7, 2018. [Doc. 1]. On April 17, 2019, Plaintiffs filed the instant Motion for Sanctions based on the loss/destruction of the photos. *Id.* at 1.

## ANALYSIS

Plaintiffs claim that Defendants spoliated evidence by failing to preserve the photos taken by Vest. In response, Defendants argue that (1) they had no duty to preserve the photos, (2) Plaintiffs suffered no prejudice from the loss of the photos, and (3) Defendants lacked the necessary intent to justify imposition of a default judgment or an adverse-inference jury instruction. [Doc. 111] at 3–10.

The Court must first determine which law to apply. Plaintiffs rely on three sources of law: Federal Rule of Civil Procedure 37(b), the Court's inherent authority, and Rule 37(e). [Doc. 103] at 6–7. Because Plaintiffs do not explain how Defendants' alleged spoliation violated a discovery

---

[1] Armstrong testified that Vest attempted to send him the photos, but he never received them. [Doc. 103-2] at 2.
[2] Plaintiffs contest this allegation, stating that "nobody informed the Plaintiffs about the fire until the Plaintiffs threatened this lawsuit." [Doc. 43] at 2. The parties agree that "[b]y e-mail dated February 26, 2018, Defendant Armstrong confirmed to Plaintiffs that the hay they had purchased had been destroyed in a lightning-caused fire." [Doc. 14] at 2 (Joint Status Report).

order, Rule 37(b) does not apply. Because Vest stored the photos on a cell phone, and the record does not indicate that they were ever printed, the photos constituted electronically stored information ("ESI"). Amended Rule 37(e) forecloses reliance on the Court's inherent authority to sanction for spoliation of ESI. *See Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (unpublished); *Snider v. Danfoss, LLC*, No. 15 CV 4748, 2017 WL 2973464, at *3 n.8 (N.D. Ill. July 12, 2017). The Court will therefore apply Rule 37(e).

The Court will not impose spoliation sanctions because (1) Plaintiffs fail to establish that Defendants knew or should have known litigation was imminent, and (2) Plaintiffs fail to establish that Defendants acted with an intent to deprive Plaintiffs of the photos' use in future litigation. Nonetheless, the Court will bar testimony and argument concerning the photos under Rule 403 because the probative value of mentioning photos which Defendants cannot produce at trial is substantially outweighed by the danger of unfair prejudice to Plaintiffs.

**A. Plaintiffs' spoliation claim fails because they have not established that Defendants knew or should have known that litigation was imminent at the time of the fire.**

Rule 37(e) provides that:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
  (A) presume that the lost information was unfavorable to the party;
  (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
  (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). The Court must now determine whether Defendants failed to preserve ESI that should have been preserved in anticipation of litigation. Although the Court is not proceeding under its inherent authority, it may look to cases discussing inherent authority when determining what event triggered Defendants' duty to preserve under Rule 37(e). "'Rule 37(e) is based on th[e] common-law duty; it does not attempt to create a new duty to preserve.' . . . Thus, case law in existence prior to the newly amended Rule 37(e), regarding when the duty to preserve attaches, still controls." *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-cv-02464-JWL-TJJ, 2016 WL 492743, at *4 (D. Kan. Feb. 8, 2016) (alteration in original) (quoting Fed. R. Civ. P. 37(e) advisory committee's notes to the 2015 amendment); *see Russell v. Nebo Sch. D Dist.*, No. 2:16-CV-00273-DS, 2018 WL 4627699, at *2 (D. Utah Sept. 26, 2018); *Steves & Sons, Inc. v. JELD–WEN, Inc.*, 327 F.R.D. 96, 110 (E.D. Va. 2018) ("Because Rule 37(e) imports many of the same elements of the sanctions inquiry related to the Court's inherent power, the result as to any tangible evidence . . . destroyed is the same.").

"A spoliation sanction is proper where . . . a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent . . . ." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015). Once a party "reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1295 (D.N.M. 2016) (quoting *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-cv-0279 WJ/ACT, 2012 WL 12294413, at *2 (D.N.M. Aug. 31, 2012)). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* at 1296. "[T]he

duty to preserve relevant [evidence] should require more than a mere possibility of litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). "In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification . . . from a potential adversary." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015).

Most courts find that a party reasonably anticipates litigation after it has a certain type of negative interaction with its potential adversary. For example, it is "crystal clear that litigation [is] reasonably foreseeable" when an entity "receive[s] actual, written notice" that an adversary intends to pursue litigation. *Browder*, 187 F. Supp. 3d at 1296; *see Philips Elecs. N. Am. Corp.*, 733 F. Supp. 2d at 1195 (filing of lawsuit). Even if a party does not expressly declare that it intends to pursue litigation, under certain circumstances its actions could indicate that litigation is imminent. *See Gates Found. v. CRP Indus., Inc.*, No. 1:16-cv-01145-KLM, 2018 WL 4697327, at *11 (D. Colo. Aug. 10, 2018) (sending of preservation demand and subpoena); *Baker*, 2012 WL 12294413, at *5 (rejection of settlement offer); *see also Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 07-cv-01379-WYD-CBS, 2009 WL 1328483, at *8 (D. Colo. May 12, 2009) (stating that, though a letter did not threaten litigation, it caused a company to reasonably anticipate litigation because it gave a damages calculation, claimed damages would continue to accrue, and gave a deadline for payment). Such interactions need not specifically mention litigation or legal concepts such as damages to make litigation imminent. *See Zbylski*, 154 F. Supp. 3d at 1164–66 (stating that a disciplinary meeting between a school and a teacher caused the school to reasonably

anticipate litigation because the teacher brought his union representative to the meeting, which signaled to the school that its relationship with the teacher had become adversarial). Courts often analyze the specific language used by the parties to determine whether an interaction or communication caused a potential adversary to reasonably anticipate litigation. *See, e.g.*, *Cache La Poudre Feeds, LLC*, 244 F.R.D. at 616–17, 622–23 (examining a letter sent by one potential adversary to another and finding that its language "must be more explicit and less equivocal" than language which did not threaten litigation or demand preservation of certain evidence).

Plaintiffs, however, do not rely on a demand letter or complaint—or any interaction with Defendants—to argue that Defendants should have reasonably anticipated litigation. Rather, they argue that discovery of the alleged fire, by itself, was sufficient to put Defendants on notice that litigation was imminent. [Doc. 103] at 4; [Doc. 117] at 5.

It is possible, though uncommon, for an event to trigger the duty to preserve evidence, even without any interaction with a potential adversary. For example, in *Stevenson v. Union Pacific Railroad Co.*, a case cited by Plaintiffs, the Eighth Circuit held that the defendant acted in bad faith when it destroyed tapes after an accident causing serious injury or death because, among other reasons, it had "knowledge that litigation is frequent when there has been an accident involving death or serious injury." 354 F.3d 739, 748 (8th Cir. 2004). Similarly, in *Browder*, the court noted in dicta that the mere fact that the municipal defendant knew its police officer caused a serious traffic accident[3] would be sufficient to make litigation against the city reasonably foreseeable.

---

[3] The accident in *Browder* killed plaintiff Ashley Browder and seriously injured plaintiff Lindsay Browder. *Browder v. City of Albuquerque*, No. 13-cv-0599 RB/KBM, [Doc. 1-1] at 5.

*Browder*, 187 F. Supp. 3d at 1296 n.3.[4] Though *Browder* does not make clear why the mere fact of knowledge of the accident would make litigation reasonably foreseeable, the triggering event, like *Stevenson*, involved a serious accident—an event commonly producing litigation. *Cf. ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2018 WL 509890, at *6 (N.D. Ind. Jan. 23, 2018) (holding that the totality of the circumstances indicated that the mere presence of a fire triggered the defendant company's duty to preserve because fire scenes are by their nature "temporary," the fire caused millions of dollars in property damage, and the fire *injured two persons*).

Here, the lack of interaction between Defendants and Plaintiffs strongly weighs against finding that Defendants reasonably anticipated litigation. Plaintiffs present no evidence demonstrating when—or even if—they sent Defendants a demand letter prior to suit.[5] Because the record reveals almost no communications between Plaintiffs and Defendants about the fire— much less the substance of any such communication—it is unclear whether Defendants had sufficient indication that Plaintiffs intended to sue over the lost hay before they were served. Even Plaintiffs concede that they "would have [had] absolutely no way to know about the loss" because Defendants did not tell them about it until later. [Doc. 117] at 5. Unlike the clear written notice

---

[4] *Browder* is the only District of New Mexico case to state (albeit in dicta) that litigation was imminent despite the potential absence of some interaction with the adversary.

[5] Plaintiffs argue that Defendants failed to inform them of the fire until they threatened to sue them. [Doc. 43] at 2. Though the Court understands that Plaintiffs believe Defendants hid the fire from them by not telling them about it until later, which could indicate that Defendants understood that revealing the loss would cause a dispute, Defendants believe that they promptly told Plaintiffs that the fire occurred. *Compare id.* ("[N]obody informed the Plaintiffs about the fire until the Plaintiffs threatened this lawsuit."), *with* [Doc. 43-1] at 7–8 (Defendants' Response to Interrogatory No. 9) ("Armstrong understands that Alfred Vest informed Plaintiffs within one week of the fire . . . that a lightning-caused fire had occurred and that a portion of the Plaintiffs' hay had been destroyed . . . ."), *and* [Doc. 55-1] at 6 (Vest's Deposition Transcript) (stating that Vest testified that he informed Plaintiffs' representative of the fire "the next time I talked to him"). This factual dispute prevents the Court from assuming, as Plaintiffs do, that Defendants deceptively hid the loss from Plaintiffs.

of an intent to pursue litigation in *Browder*, the clear demand for payment in *Asher Associates*, and the preservation demand in *Gates Foundation*, Plaintiffs produce no communication—written or otherwise—placing Defendants on notice of imminent litigation. Defendants never discussed the fire with Plaintiffs in an adversarial setting equivalent to speaking with a union representative as in *Zbylski*. Plaintiffs' Motion can thus succeed only if they persuade the Court that the fire itself triggered Defendants' duty to preserve.

The Court is not so persuaded. Plaintiffs have not established that the fire here is the type of incident that normally results in litigation. Unlike *Stevenson*, *Browder*, and *ArcelorMittal*, the fire did not result in any death or serious injury. Plaintiffs cite no case holding that, absent any communication between potential adversaries, a potential[6] breach of contract alone places a party on notice of imminent litigation. Cases from other jurisdictions suggest otherwise. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 510 (D. Md. 2009) (holding that when the defendant company prevented the plaintiff from obtaining a bonus—allegedly in violation of their contract—it did not trigger the duty to preserve because, though "these actions [gave] rise to the dispute that underlies the litigation," that the plaintiff had "real questions" about the defendant's ability to perform the contract did not alone make litigation reasonably foreseeable); *see also Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998–99 (N.D. Ohio 2016) (stating that the duty to preserve evidence in a breach-of-contract and breach-of-warranty case arose earlier than suit where, unlike here, the defendant had "*sought redress* for hundreds of allegedly defective . . .

---

[6] It must be remembered that Defendants take the position—however tenuous it appears to Plaintiffs—that the loss of the hay and the resulting failure to deliver was not a breach of the contract. Defendants contend that Plaintiffs bore the risk of loss while the hay was stored on Defendants' farm. If, in fact, that was the agreement between the parties, the loss of the hay would not have caused Defendants to believe that litigation was imminent. Whether that was the agreement between the parties is a factual dispute which the jury will need to decide.

batteries [made by the plaintiff]" and the defendant had taken batteries valued at $2.3 million from the plaintiff's warehouse (emphasis added)). As Plaintiffs have produced virtually no caselaw suggesting that the fire should have caused Defendants to reasonably anticipate litigation, the Court cannot rule in their favor.

Additionally, the parties' business relationship weighs against finding that the fire automatically triggered Defendants' duty to preserve. As Plaintiffs concede, they did business with Defendants for many years "without incident." [Doc. 1-1] at 14. "[W]hen parties have a business relationship that is mutually beneficial . . . litigation will generally be less foreseeable than would litigation resulting from a relationship that is not mutually beneficially or is naturally adversarial." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1131, 1325 (Fed. Cir. 2011). The parties' previously amicable relationship weighs against assuming that the fire would have made litigation imminent. Given the nature of the instant dispute, Plaintiffs fail to establish that Defendants reasonably anticipated litigation at the time they discovered that the alleged fire had destroyed the hay.

Plaintiffs advance only one argument for why the fire should have caused Defendants to reasonably anticipate litigation: because Defendants "take the position that the hay was the purchaser's responsibility from the time the hay was baled and stacked at the location." [Doc. 103] at 4. The Court is not persuaded by this argument. If Defendants believed that the hay was not their responsibility, then, arguably, they would have had no reason to expect Plaintiffs to sue them over its loss. *See supra* note 6.

**B. Plaintiffs have not demonstrated that Defendants *intentionally* deprived them of the photos' use in the litigation.**

Plaintiffs request three types of sanctions for spoliation of the photos under Rule 37(e): (1) default judgment; (2) an adverse-inference jury instruction at trial stating that the photos would have revealed that no fire occurred, and/or (3) an order requiring Defendants to pay "any fees and costs incurred by Plaintiffs that would not have been incurred" had Defendants preserved the photos. [Doc. 103] at 8–9. The Court will not award sanctions because Plaintiffs have not established that spoliation occurred. Even if Plaintiffs had proven spoliation, the Court would nonetheless reject the first two types of sanctions because Plaintiffs have not proven that Defendants acted with the intent to deprive them of the photos' use in the litigation.

In order for the Court to impose a default judgment or give an adverse-inference instruction, it must find that Defendants acted "with the intent to deprive another party of the [photos'] use in the litigation." Fed. R. Civ. P. 37(e)(2). Negligence does not suffice. *See* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment ("Negligent or even grossly negligent behavior does not logically support that inference [instruction]. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.").[7]

---

[7] The Tenth Circuit has not yet decided what standard of proof a movant must meet if the Court were to impose a default judgment or give an adverse-inference instruction under Rule 37(e). Neither has the District of New Mexico, which has presumed (without deciding) that the preponderance-of-the-evidence standard applies, not the clear-and-convincing-evidence standard. *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare*

Defendants argue they did not deliberately destroy the photos because Vest lost them when he "acquired a new phone," not pursuant to a scheme to deprive Plaintiffs of evidence. [Doc. 111] at 9. Vest's testimony to that effect represents the only evidence cited by any party on how the photos became lost. *See* [Doc. 103] at 2; [Doc. 111] at 2. Based on Vests' testimony, the Court cannot determine whether he "lost" the photos because he foresaw litigation over the fire or he negligently lost them when acquiring a new phone. The mere fact that evidence no longer exists does not, in this instance, support an inference of bad faith. If, for example, Defendants lost the photos after it became clear that the dispute over the fire's existence would define the litigation, that fact could weigh in favor of finding the requisite intent. But Plaintiffs present no evidence of *when* Defendants lost the photos. Absent any evidence that Defendants intended to deprive Plaintiffs of the photos' use in litigation, the Court cannot impose a default judgment or give an adverse-inference jury instruction.

C. **The Court will bar at trial any testimony or argument concerning the photos because the probative value of mentioning the photos at trial is substantially outweighed by the danger of unfair prejudice to Plaintiffs.**

Though the Court will not sanction Defendants for spoliation of evidence, it nonetheless declines to allow them—or Plaintiffs—to mention the photos at trial. Federal Rule of Evidence 403 permits the exclusion of even relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "'[U]nfair prejudice' means 'an undue tendency to suggest [a] decision on an improper basis . . . .'" *United*

---

*Servs.*, 2017 WL 3535293, at *1 n.2 (D.N.M. Aug. 16, 2017). Because, as in *N.M. Oncology*, Plaintiffs' Motion "should be denied on the merits even under a preponderance[-]of[-]the[-]evidence standard," *id.*, the Court applies that standard here.

*States v. Isabella*, 918 F.3d 816, 837 (10th Cir. 2019) (alterations in original) (quoting *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018)). The probative value of testimony concerning the photos is low: Not only is it unclear precisely what the photos depicted, but aside from the testimony of Vest, no independently verifiable way exists to confirm that the photos existed. On the other hand, mentioning the photos would suggest that the jury decide whether a fire occurred on an improper basis. Mentioning the photos strongly implies that something worthy of photography—like a fire—existed in the first place. The jury cannot properly decide this issue on such a speculative, yet powerful, implication. The low probative value of mentioning the photos is therefore substantially outweighed by the danger of unfair prejudice to Plaintiffs. The Court will bar any testimony or argument concerning the photos at trial.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion for Sanctions for Spoliation of Evidence [Doc. 103] is **DENIED**. Each side shall bear its own attorney's fees.

**IT IS FURTHER ORDERED** that any testimony or argument concerning the photos that Vest allegedly took of the smoldering remains of the fire are hereby **EXCLUDED** under Rule 403.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**